# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TRACIE H.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 5913 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Tracie H. applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§416(i), 423, 1381a, 1382c, about five years ago. (Administrative Record (R.) 174-86). She claimed that she became disabled as of December 1, 2011, due to pain through the right side of her body from an old automobile accident, PTSD, high blood pressure, memory loss, overweight, and lymphedema. (R. 213). Over the next few years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g), and the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636( c) on September 9, 2017. [Dkt. #9]. The case was reassigned to me on October 12, 2018 (R. 43), and the parties finished briefing the matter on February 11, 2019. [Dkt.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

#55]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

I.

Plaintiff is not yet 40 years old, and was just 32 years old when she claimed she could never work again. (R. 209).[2] She has a spotty work history, and from 2002 to 2011 had ten different jobs, holding on to most for no more than a few months. (R. 237). Most recently, she worked in customer service and as a nurse's aid. (R. 26, 237). At 5'6" tall and about 410 pounds, she is massively overweight with a BMI generally over 70. (R. 25).

Plaintiff has accumulated an 800-page medical record covering treatment for a variety of impairments and maladies. (R. 289-1087). As is often the case, much of it is irrelevant. Indeed, plaintiff cites only about 30 pages of the medical record in support of her motion to overturn the ALJ's decision. [Dkt. # 42]. Accordingly, we shall dispense with a tedious summary and discuss only those doctor visits and medical findings that are pertinent to the issues in this case.

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined plaintiff was not disabled. The ALJ found that plaintiff had several severe impairments: "fractures of UE, hypertensive vascular disease, obesity, chronic venous insufficiency, and anxiety disorder and morbid obesity." (R. 22). The ALJ also noted that plaintiff had a meniscus tear that was not a severe impairment, but said he considered it in combination with plaintiff's other impairments. (R. 22). The ALJ found that none of plaintiff's impairments, singly or in combination, amounted to a condition that met or equaled an impairment assumed to be

---

[2] To qualify for DIB, a claimant must be disabled prior to the expiration of their insured status. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

disabling in the Commissioner's listings, explaining that counsel "did not argue and therefore waived per se theory of disability, at step-3, of the sequential evaluation process." (R. 23). Nevertheless, the ALJ then summarized plaintiff's testimony and treatment records from Dr, Rivera and considered listings 1.07 and 12.06. (R. 23-24).

The ALJ set forth a somewhat confusing residual functional capacity finding, determining that plaintiff could perform "sedentary work . . . except [sic] lift up to 10 pounds, sit for up to six hours and stand/walk about 2 hours in 8-hour workday with normal breaks, no climbing ropes, ladders and scaffolds, occasionally climbing ramps and stairs, balance, stoop, kneel, crawling, crouch, simple, routine repetitive tasks, in a work environment free of fast paced production requirements, involving only simple work related decisions with few if any work place change [sic], only occasional interaction with public, co-workers, and supervisors[.]" (R. 24-25). The ALJ then stated that plaintiff's "subjective complaints are not shown to persist in such an intense fashion per the record." (R. 25). The ALJ discussed a number of medical records that showed mostly benign findings, including a treating medical source opinion that showed "full capacity with ability to perform activities of daily living, able to walk, stoop, bend, sit, turn, climb, push, pull and travel, no problems noted with fine or gross manipulation, mild limitations with social functioning and no limitations with concentration." (R. 25). The ALJ then noted that his RFC (residual functional capacity) finding was similar to the findings of the agency physicians who reviewed the medical evidence. (R. 26).

Next, the ALJ found that the plaintiff was a younger individual under the Commissioner's regulations, had at least a high school education and is able to communicate in English, and had no transferable job skills. (R. 26). Given these vocational factors, plaintiff would be found "not

3

disabled" under the Medical Vocational Guidelines if she had the capacity to perform a full range of sedentary work. (R. 27). As she did not, the ALJ relied on the testimony of a vocational expert who said that an individual with plaintiff's restrictions could perform sedentary work as a sorter (198,000 jobs in the national economy) or assembler (230,000 jobs). (R. 27). As these jobs exist in significant numbers in the national economy, the ALJ concluded that plaintiff was not disabled under the Act and not entitled to DIB or SSI. (R. 27).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)*; Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997).

But, in the Seventh Circuit, the ALJ also has an obligation to build what has been called a logical bridge between the evidence and the result in order to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The reviewing court must be able

to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." As Judge Posner said in *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996), in which the doctrine, as applied in Social Security cases, originated: "we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."

The phrase "logical bridge," seems to have first appeared in *Thompson v. Clifford*, 408 F.2d 154,167 (D.C. Cir. 1968), where Judge Spottswood Robinson said in an administrative case not involving Social Security that: " 'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in the logical bridge between statute and regulation." Judge Posner then used the phrase "logical bridge" in a Social Security case merely to require Administrative Law Judges in those kinds of cases to articulate the reasons for their decisions. *Sarchet*, *supra.* But, *Sarchet* did not heighten the burden of proof or inform ALJs in Social Security cases of rules that had to be followed or tests that had to be employed. The Seventh Circuit, itself, has called the logical bridge requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir.2008).

### III.

The plaintiff argues that the ALJ's step two and step three determinations were erroneous, that he improperly discredited her complaints of disabling pain, that his residual functional capacity determination was erroneous, and that his step four determination was erroneous. We shall address

5

each of plaintiff's arguments. But first we need to point out that the ALJ's decision is supported by substantial evidence.

**A.**

The major problem with plaintiff's case is the fact that her treating physician, Dr. Rivera, not only thinks she can work, but thinks she can work at a higher level than the ALJ did. Dr. Rivera began treating plaintiff in December 2009, and issued his opinion in October 2013, noting diagnoses of obesity, lymphedema, and anxiety. (R. 883). Importantly, Dr. Rivera found that, during an 8-hour workday, plaintiff would have *no limitations* in her capacity to walk, bend, stand, sit, or stoop, and could lift up to 50 pounds and up to 25 pounds frequently. (R. 886). He prescribed Lorazepram for her anxiety disorder, which resulted in good control. (R. 886). Plaintiff was mildly limited in her daily activities and social functioning, but had no limitation in concentration, persistence, and pace. (R. 886). That's a greater capacity for work than the ALJ found plaintiff capable of performing.

An ALJ must give "controlling weight" to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). *See also Ronning v. Colvin*, 555 F. App'x 619, 623 (7th Cir. 2014)(ALJ properly credited opinion of plaintiff's treating physician that she could work with some restrictions). Plaintiff doesn't argue that her treating physician's opinion that she can work was out of line with the rest of the record and doesn't point to any evidence to undermine her own doctor's opinion other than diagnoses. [Dkt. # 42, at 7-8]. But a diagnosis is not a disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions of hers but their

severity and, concretely, whether, as she testified . . . they have caused her such severe pain that she cannot work full time.").

If there is evidence in the record that runs counter to plaintiff's doctor's opinion, it is up to her to direct us to it. That is the rule in all cases. *See, e.g., Kreg Therapeutics, Inc. v. Vital Go, Inc.* 919 F.3d 405, 415 (7th Cir. 2019)("district court was not required to comb docket sheet and earlier briefing to identify evidence that manufacturer did not bring to court's attention."). The contrary argument wrongly attempts to foist the lawyer's obligations on the court. Even though "[t]he claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, . . . ." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). *See also Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c) ( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). She has not done so.

Indeed, the medical opinion in this case overwhelmingly supports a finding that plaintiff can work – at least at the level the ALJ found, if not more. A consultative psychological evaluation found plaintiff to have mild to moderate limitations from anxiety and PTSD, but, significantly, did not find her unable to work. (R. 910). *See Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013)("Yet a mild, or even a moderate, limitation in an area of mental functioning 'does not prevent an individual from functioning satisfactorily.'"). A consultative physical examination revealed mostly normal results aside from obesity and a small-stepped, wide-based gait. (R. 914-16). The two state agency reviewers – one a doctor, one a psychologist – went over the medical evidence and

found that plaintiff was *not* disabled; but they did find her more restricted than her treating physician did. (R. 88-110). An ALJ may properly rely upon the opinion of these medical experts. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ went with these more conservative opinions of plaintiff's capacity for work. Even though he clearly said this (R. 24, 26), the plaintiff unjustifiably accuses him of "playing doctor" and relying on his own medical judgment. [Dkt. # 42, at 8].[3]

We must affirm the ALJ's decision if it is supported be substantial evidence. 42 U.S.C. § 405(g); *Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019); *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018). The review is done with deference; we can't reweigh the evidence or substitute our own judgment for the ALJ's. *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). Even if there is conflicting evidence that allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the ALJ's resolution of that conflict. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). Here, the substantial evidence requires affirmance of the ALJ's decision. It is supported not only by the plaintiff's own doctor, but by state agency reviewers. That's far more than the proverbial "scintilla" of evidence, and it's certainly adequate to support a conclusion that plaintiff can perform sedentary work.

---

[3] The only contrary opinion comes from Dr, Rivera in which he contradicts his previous opinion with a single sentence note: "[plaintiff] has diagnosis [sic] of PTSD, hypertension, lymphedema, morbid obesity, the severity of these conditions deem [sic] her disabled." (R. 1053). Plaintiff does not mention this note, and so any argument she might have made regarding it is deemed waived. *Truelove v. Berryhill*, 753 F. App'x 393, 397 (7th Cir. 2018); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

**B.**

That should be the end of it, but plaintiff has a number of criticisms of the ALJ's Opinion that one supposes fall under the heading of failure to build a "logical bridge." But as Judge Easterbrook's Opinion in *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985) explains, the logical bridge requirement does not, at bottom, change the method of analysis in Social Security cases and explains why the requirement exists at all and its limitations:

> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do. Thus we [have] held . . . that "when the ALJ fails to mention rejected evidence" the court must send the case back, for it cannot tell whether the ALJ fulfilled his statutory duty. . . . This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits. But . . . this court does "not require the ALJ to evaluate in writing every piece of testimony and evidence submitted." We require only "a minimal level of articulation by the ALJ as to his assessment of the evidence ... in cases in which considerable evidence is presented by the claimant".
>
> If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough. We have never embraced the more extensive proposition, which may be the rule [elsewhere], that the ALJ must mention and assess in writing every piece of evidence. . . . By "minimal level of articulation" we mean just that—enough to show that the ALJ considered the evidence the law requires him to consider. A more extensive requirement sacrifices on the altar of perfectionism the claims of other people stuck in the queue.

*Id*. at 287–88.

The Opinion of the ALJ here is sufficient, especially where the medical opinion is so one-sided. To begin with, plaintiff says that the ALJ gave short shrift to her mental impairments because he referred to a single report from Dr. Rivera indicating plaintiff's psychological impairments were all stable on medication. [Dkt. #42, at 6]. But that was just one snippet of evidence the ALJ

9

mentioned. (R. 24, 25). The ALJ summarized a number of other findings, and drew his assessment of the plaintiff's restrictions stemming from her psychological impairments demonstrated in those findings from the reviews/opinions of the agency doctors. (R. 24, 25). Pretending that evidence does not exist is not helpful to a resolution of the case.

Plaintiff claims that the ALJ used his "own lay-person interpretation of the 'psychiatric' references from an internist's progress notes [and thereby] attempt[ed] to 'play doctor.'" [Dkt. # 42, at 8]. While an ALJ may not play doctor, *McHenry*, 911 F.3d at 871, the plaintiff is mistaken that the ALJ did that here. The argument carefully ignores the fact that the ALJ clearly relied on the opinions of the agency psychologist that reviewed the record. (R. 24, 26). That psychologist found plaintiff was mildly restricted in activities of daily living and maintaining concentration, and moderately restricted in social functioning. (R. 24, 89). That's exactly what the ALJ found, citing that psychologist's opinion. (R. 24). The ALJ did not "play doctor" and come up with that on his own. The plaintiff's argument appears to be based on a faulty reading of the ALJ's opinion.

The plaintiff points to diagnoses of mild to moderate anxiety and PTSD from Dr. Rivera and the agency consultative examining psychologist and argues that the ALJ overlooked this. [Dkt. #42, at 7]. The ALJ didn't overlook these diagnoses; he explicitly found plaintiff had a severe anxiety disorder. The problem for plaintiff, as already mentioned, is that diagnoses are not disabilities. *Schmidt*, 395 F.3d at 746; *Estok*, 152 F.3d at 640. Plaintiff has to show what restrictions stem for her anxiety disorder that prevent her from working. Plaintiff doesn't direct the court to any mention of any such restriction anywhere in the 800-page record. [Dkt. # 42, at 7-8].

The plaintiff then claims the ALJ failed to assess the connection between her medically determinable impairments and her statement of symptoms to determine the limiting effects plaintiff's

anxiety disorder has on her ability to work. [Dkt. # 42, at 8]. Specifically, the plaintiff notes that the state agency consultative examination showed that she weighed 430 pounds, had shortness of breath on mild exertion, and had massive lymphedema in both legs. [Dkt. #42, at 8 (R. 915)]. But, again, the question is what did that mean as far as being able to perform sedentary work? Plaintiff's grip strength was normal; her upper extremity range of motion was normal; her lower extremities examination was normal; her range of motion in her lumbar and cervical spine was normal; her strength was normal, and her reflexes were normal. (R. 915). Her own doctor, familiar with her treatment and objective findings over an extended period, felt she had a full capacity to work. Her allegations were simply out of sync with the medical evidence.[4]

From there the plaintiff comes to what she for some reason calls the ALJ's "first error": that the ALJ failed to follow the psychiatric review technique, and overlooked the "A" criteria and proceeded directly to the "B" criteria. [Dkt. #42, at 9]. But it amounts to little more than nitpicking. First, the agency regulations were changed in 2000 and no longer require that a PRT be completed in every case. *Carter v. Astrue*, 413 F. App'x 899, 905 (7th Cir. 2011). Second, the state agency

---

[4] The plaintiff briefly claims that the ALJ failed to thoroughly analyze her complaints of pain. [Dkt. #42, at 13]. But the ALJ actually provided a detailed summary of her allegations. (R. 23). He rejected the extent of her allegations for valid reasons: the medical evidence, especially her own doctor's opinion, *see Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008)(". . . although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration."), and her demeanor at the hearing. *See Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016); *Carter v. Colvin*, 556 F. App'x 523, 527 (7th Cir. 2014)(demeanor at the hearing a legitimate reason for disbelieving testimony). For example, in rejecting the plaintiff's allegation that she had to elevate her legs "almost constantly" or every 20 or 30 minutes (R. 44, 46-47), the ALJ noted there was no indication from her doctor this was necessary and she did not have to do so at the hearing, which lasted thirty minutes. (R. 23). While the ALJ's evaluation of plaintiff's allegations might not have been perfect, we cannot say it was patently wrong. *See Shideler v. Astrue,* 688 F.3d 306, 312 (7th Cir. 2012)("Despite these shortcomings, the ALJ adequately evaluated [plaintiff's] credibility, and we see no reason to reverse."); *Kittelson v. Astrue*, 362 F. App'x 553, 557 (7th Cir. 2010).

reviewer completed a PRT, which includes the question of equivalence, and which the ALJ referenced and adopted in his decision. *See, e.g., Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015)(ALJ properly adopted reviewer's finding); *Davis v. Berryhill*, 723 F. App'x 351, 356 (7th Cir. 2018)(proper for the ALJ to rely on state agency reviewers in question of equivalence).

As for skipping the "A" criteria to go to the "B" criteria, an individual must meet both "A" and "B" criteria in order to be considered disabled under the listings. So, if they fail to meet either one, the inquiry is at an end. It's not clear if the plaintiff demands that all ALJs go through both criteria even where one is not met, but the fact that the ALJ failed to do that here is no reason to overturn his decision. "[W]e [have to] give the opinion a commonsensical reading rather than nitpicking at it." *Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir.2008); *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). There would be little point in remanding a decision so an ALJ could address part "A" criteria when part "B" renders that analysis moot. And, more importantly, the reviewing psychologist whose opinion the ALJ adopted did assess the "A" criteria and found the medical evidence did not precisely satisfy the diagnostic criteria. (R. 72, 89).

Plaintiff then makes a couple of arguments regarding her obesity. She claims the ALJ failed to consider evidence of her obesity in his step three finding [Dkt. #42, at 11], and that the ALJ failed to consider her obesity in connection with her knee. [Dkt. # 42, at 12]. Again, at step three, the state agency reviewer considered all of plaintiff's impairments in arriving at an RFC finding which the ALJ, after considering the medical evidence, essentially adopted. (R. 26). And, significantly, the plaintiff's treating physician who was well aware of her obesity and its effects along with her other impairments through the course of her treatment found she was able to work at a greater capacity than did the ALJ or the state agency reviewing doctors. *See Skarbek v. Barnhart*, 390 F.3d 500, 504

(7th Cir. 2004)("Thus, although the ALJ did not explicitly consider [plaintiff's] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."). At the same time, plaintiff does not point to any evidence to explain how her obesity hampers her ability to perform sedentary work. Without that, there's no reason to overturn the ALJ's decision. *See, e.g., Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015); *Dornseif v. Astrue*, 499 Fed.Appx. 598, 600 (7th Cir.2013); *Skarbek*, 390 F.3d at 504.

Finally, plaintiff argues that the hypothetical the ALJ posed to the vocational expert did not include "limitations supported by the medical evidence . . . such as the Plaintiff's obesity, combined with her leg pain, knee pain, 'massive bilateral lipedema [sic] in both legs, and 'small-stepped wide based gait.'" [Dkt. # 42, at 15]. Again, obesity and lymphedema are not limitations. They are diagnoses, not disabilities. Plaintiff's own treating physician was well aware of these conditions but didn't think they imposed any restrictions at all on plaintiff's ability to walk, stand, sit, and very little restriction on her ability to lift or carry. (R. 886). In fact, the hypothetical posed by the ALJ imposed greater limitations than those found by plaintiff's doctor! All the ALJ was required to do was incorporate into his hypothetical those limitations he found credibly supported by the medical record. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Thompson v. Colvin*, 575 F. App'x 668, 677 (7th Cir. 2014); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). He clearly did that here, where he asked the vocational expert to assume a person could perform sedentary work involving simple, repetitive tasks, no fast-paced production requirements, few if any workplace changes, and no more than occasional interaction with the public, co-workers, or supervisors. (R. 53-54).

In the end, as was the ALJ, we are satisfied with opinions from medical experts on both "sides of the aisle" – the agency's and the plaintiff's – that the evidence showed plaintiff is not

13

disabled. In order to have found otherwise, the ALJ would have had to reject the assessments of not only the agency's reviewing physician and psychologist, but the plaintiff's treating physician as well! That would certainly amount to playing doctor, something plaintiffs constantly remind the court that ALJs are not allowed to do.

## CONCLUSION

For the foregoing reasons, the ALJ's decision is affirmed. The defendant's motion for summary judgment [Dkt. # 52] is granted and the plaintiff's motion to reverse the final decision of the Commissioner [Dkt. # 41] is denied.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 7/26/19